IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NADINE DENNIS, | ) | CASE NO. 1:09 CV 2568 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action under 42 U.S.C. § 405(g) by Nadine Dennis seeking judicial review of the final decision of the Commissioner of Social Security denying Dennis's applications for disability insurance benefits and supplemental security income.[2]  The Commissioner, in response, seeks affirmation of the denial of benefits.[3]  Both parties have briefed their respective positions[4] and have participated in a telephonic oral argument before me on this matter.[5]

---

[1] The parties have consented to my jurisdiction.  ECF # 13.

[2] ECF # 1.

[3] ECF # 9.

[4] ECF # 19 (Commissioner); ECF # 21 (Dennis).

[5] ECF # 22.

For the reasons that follow, the Commissioner's decision to deny Dennis's applications for disability insurance benefits and supplemental security income is hereby reversed and the case remanded for further proceedings.

## Facts

**A.    Background**

Dennis filed applications for disability insurance benefits and supplemental security income in March, 2004, alleging disability as of April 1, 2001.[6]  Those applications were initially denied, as well as upon reconsideration.[7]  Subsequently, Dennis obtained a hearing on her applications, which hearing ultimately resulted in a decision from an Administrative Law Judge ("ALJ") denying the applications.[8]  That decision was then vacated by the Appeals Council and the matter remanded for a second hearing before an ALJ.[9]  Following that hearing, at which Dennis appeared and testified, the ALJ denied Dennis's claim on January 29, 2009.[10]  When the Appeals Council denied Dennis's request for review in September, 2009, the ALJ's decision became final.[11]

---

[6] ECF # 21 at 1 (citing transcript).

[7] *Id.*

[8] *Id.*

[9] *Id.* at 1-2.

[10] *Id.* at 2.

[11] *Id.*

**B.      The ALJ's decision**

The findings of the ALJ are organized around the evidence as viewed under the five-step sequential evaluation process set forth in the regulations.[12]

At step one, the ALJ concluded that Dennis had not engaged in any disqualifying substantial gainful activity since the alleged onset date of her disability in April, 2001.[13]

The ALJ found at step two that Dennis had six "severe impairments:" (1) fibromyalgia; (2) plantar fasciitis and tendonitis in both feet; (3) degenerative joint disease in both knees; (4) an affective disorder; (5) psychological factors affecting a medical condition; and (6) a personality disorder.[14]

In the evaluation at step three, the ALJ concluded that none of these impairments – either alone or in combination – met or medically equaled any of the listed impairments.[15] I observe that the ALJ particularly noted that his conclusion here was expressly supported by the specific opinions of the state agency reviewing psychologists.[16] By contrast, the ALJ acknowledged that "if fully credited, the opinions of Ms. Dennis' treating psychiatrists would lead to the conclusion that Ms. Dennis' affective disorder(s) was/were of listing-level

---

[12] 20 C.F.R. § 419.920(a).

[13] Transcript ("Tr.") at 22.

[14] *Id.* at 23.

[15] *Id.* at 26.

[16] *Id.* at n.17.

severity."[17]  The ALJ rejected that conclusion for two stated reasons:  (1) if Dennis's mental functioning was as bad as described by her treating psychiatrists, Dennis should be in a hospital; and (2) some of these opinions by treating sources "are directly contradicted by the record."[18]

After the step three analysis, the ALJ made a residual functional capacity (RFC) assessment.[19]  In that respect, the ALJ determined:

> Since the April 1, 2001 alleged onset date, and with the exception of possible briefer periods of less than 12 continuous months, Ms. Dennis has retained the residual functional capacity to perform all the basic work activities described in 20 CFR 404.1521, 404.1545, 416.921 and 416.945 within the following parameters:  she has been able to lift, carry, push or pull up to 10 pounds frequently and up to 20 pounds occasionally; and she has been able to sit with normal breaks for six hours in an eight-hour period; and she has been able to stand and/or walk with normal breaks for six hours in an eight-hour period. Non-exertionally, Ms. Dennis has not been able to perform work where she would have to climb ramps, stairs, ladders or scaffolds on a more than frequent basis.  Similarly, Ms. Dennis has not been able to perform work where she would have to balance, stoop, kneel, crouch or crawl on a more than frequent basis.  On account of her mental impairments, Ms. Dennis has been limited to simple, routine work where she would not have to have more than superficial interactions with co-workers, or more than occasional interactions with members of public.  In addition, Ms. Dennis has not been able to perform work where she would have to engage in negotiations or confrontations with others.[20]

---

[17] *Id.* at n.18.

[18] *Id.*

[19] *Id.* at 27.

[20] *Id.*

In the step four analysis, the ALJ found that Dennis had done past relevant work as a clerical worker and as a security guard.[21]  The ALJ further found that Dennis's RFC would preclude her from performing that past relevant work.[22]

At step five, the ALJ concluded that, given her RFC, Dennis's vocational profile (younger individual, limited education, and able to communicate in English), and the testimony of a vocational expert (VE), there were a significant number of jobs available locally, state-wide, and nationally that Dennis could perform.[23]  Accordingly, the ALJ found that Dennis was not disabled, thereby denying her applications for benefits.[24]

## C.    Dennis's arguments

Dennis here makes two major arguments in favor of reversing the decision of the ALJ. First, she contends that the ALJ improperly substituted his opinion for that of the treating physicians.[25]  Next, she maintains that the ALJ's assessment of her mental and physical residual functional capacity is not supported by substantial evidence.[26]

---

[21] *Id.* at 34.

[22] *Id.*

[23] *Id.* at 35.

[24] *Id.* at 35-36.

[25] ECF # 21 at 13-17.

[26] *Id.* at 18-19.

As concerns the ALJ's treatment of the treating sources' opinions, Dennis acknowledges that the ALJ is permitted to resolve conflicts in testimony, but states that, if the evidence is properly understood, in this case "there is no conflict for the ALJ to weigh."[27]

Specifically, Dennis notes initially that significant medical evidence was added to the record after the consultative examiners and state agency doctors reviewed the file.[28]  Dennis asserts this new evidence was in front of the ALJ here, but not before the reviewing or consulting physicians.[29]  Accordingly, she argues, because this new evidence was not before the sources relied on by the ALJ, the decision to reject the opinions of treating sources in favor of the opinions of the reviewing and consulting sources was not justified.[30]

This lack of justification is further underscored, Dennis contends, by the ALJ's improper inferences from things like her demeanor at the hearing and that she was not under professional mental health care when she filed for benefits.[31]  In addition, she asserts that the ALJ "cherry-picked" the evidence to reach the conclusion he wanted.[32]

---

[27] *Id.* at 14.

[28] *Id.*

[29] *Id.*

[30] *Id.* at 16.

[31] *Id.*

[32] *Id.* at 17.

In her second argument, Dennis maintains first that her treating podiatrist and family physician both gave more restrictive physical limitations, supported by medical records and the results of objective examinations, than did the state reviewing physician.[33] Moreover, she contends that the consultive examiner also found greater physical limitations, consistent with the findings of the treating physicians, than did the ALJ.[34]  In addition, as to her mental limitations, Dennis argues again that the ALJ's findings rest on a selective reading of the record and are not supported by the record as a whole.[35]

Based on the foregoing, Dennis seeks a finding that the ALJ committed reversible error, followed by a reversal of the decision and either an award of benefits on the existing record or a remand.[36]

## D.      Commissioner's position

The Commissioner maintains that the decision to deny benefits was supported by substantial evidence and should here be affirmed.

The Commissioner essentially contends first that the RFC's findings as to physical limitations reflect the ALJ giving Dennis "the benefit of the doubt" when, without objective evidence, he limited her to light work with some postural limitations.[37] Next, as to the mental

---

[33] *Id.* at 18.

[34] *Id.*

[35] *Id.*

[36] *Id.* at 18-19.

[37] ECF # 19 at 14.

limitations in the RFC, the Commissioner argues that the ALJ reasonably relied on the findings of Dr. Kenneth Felker, an examining psychologist, inasmuch as Dr. Felker's conclusions were supported by objective clinical findings.[38]  Moreover, the Commissioner asserts that the findings in the RFC are supported by the opinion of Dr. Bukuts, a treating psychiatrist, as well as those of Drs. Chambly and Casterline, state agency psychologists.[39]

To the extent, then, that the ALJ relied on the above sources rather than on the opinions of other treating sources, the Commissioner states that such a decision was reasonable in each case.

First, the Commissioner alleges that the ALJ had a reasonable basis for rejecting the opinion of Dr. Melody Deogracias, a treating psychiatrist, who simply indicated on a check-box form that Dennis had poor or no abilities in every area of mental functioning listed on the form.[40]  The ALJ noted in this regard that Dr. Deogracias's finding of extreme mental limitations was inconsistent with the evidence that Dennis was not hospitalized and that she exhibited mostly normal mental status findings.[41]

Likewise, the Commissioner states that the ALJ had reasonable bases to reject the opinions of Dr. Feyisayo Adeyina, Dennis's treating family physician, and Dr. Faried

---

[38] *Id.*

[39] *Id.* at 15.

[40] *Id.* at 16.

[41] *Id.*

-8-

Muntaser,[42] a treating podiatrist.[43]  The Commissioner maintains that although both treating sources placed marked limitations on Dennis's abilities to lift, stand, walk and sit, the objective medical record does not support those limitations, in that there is no evidence of muscle atrophy, radiological abnormality, or significant neurological loss.[44]

Therefore, the Commissioner argues, because the ALJ found that normal findings in Dennis's physical and  mental status examinations were inconsistent with the extreme limitations in these areas reported by the treating sources, the ALJ was within "a reasonable zone of choice" in rejecting the treating source opinions.[45]

## Analysis

### A.    Standard of review

As the Sixth Circuit has stated, review of the Commissioner's decisions "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards."[46]  This standard requires the reviewing court to affirm the Commissioner's findings if they are supported by "such relevant evidence

---

[42] Dr. Muntaser, whose report on physical capacity is at Tr. 584-85, is incorrectly identified as "Dr. Montager" in Dennis's brief, *see*, ECF # 21 at 7, and as "Dr. Muntager" in the attachment to the brief.  ECF # 21 (attachment) at 3.

[43] ECF # 19 at 16-17.

[44] *Id.*

[45] *Id.* at 17.

[46] *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (citation omitted).

-9-

as a reasonable mind might accept as adequate to support a conclusion."[47]  This means that

the Commissioner's decision must be affirmed if supported by substantial evidence even if

the Court would decide the case differently and even if the claimant's position is also

supported by substantial evidence.[48]  An ALJ's failure to follow agency rules and regulations

"denotes a lack of substantial evidence, even where the conclusion of the ALJ may be

justified based upon the record."[49]

**B.**     **The treating source rule**

The regulations of the Social Security Administration require the Commissioner to

give more weight to opinions of treating sources than to those of non-treating sources under

appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since
> these sources are likely to be the medical professionals most able to provide
> a detailed, longitudinal picture of your medical impairment(s) and may bring
> a unique perspective to the medical evidence that cannot be obtained from
> objective medical findings alone or from reports of individual examinations,
> such as consultative examinations or brief hospitalizations.[50]

---

[47] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted).

[48] *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).

[49] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (citation omitted).

[50] 20 C.F.R. § 404.1527(d)(2).

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[51]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[52] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[53]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[54] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[55] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[56] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[57]

---

[51] *Id.*

[52] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[53] *Id.*

[54] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[55] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[56] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[57] *Id.* at 535.

-11-

In *Wilson v. Commissioner of Social Security*,[58] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[59]  The court noted that the regulation expressly contains a "good reasons" requirement.[60]  The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[61]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[62]  It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[63]  The former confers a substantial, procedural right on

---

[58] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[59] *Id.* at 544.

[60] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[61] *Id.* at 546.

[62] *Id.*

[63] *Id.*

-12-

the party invoking it that cannot be set aside for harmless error.[64]  It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[65]

The opinion in *Wilson* sets up a three-part requirement for articulation against which an ALJ's opinion failing to assign controlling weight to a treating physician's opinion must be measured.  First, the ALJ must find that the treating source's opinion is not being given controlling weight and state the reason(s) therefor in terms of the regulation – the absence of support by medically acceptable clinical and laboratory techniques and/or inconsistency with other evidence in the case record.[66]  Second, the ALJ must identify for the record evidence supporting that finding." [67]  Third, the ALJ must determine what weight, if any, to give the treating source's opinion in light of the factors listed in 20 C.F.R. § 404.1527(d)(2).[68]

In a nutshell, the *Wilson* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive

---

[64] *Id.*

[65] *Id.*

[66] *Wilson*, 378 F.3d at 546.

[67] *Id.*

[68] *Id.*

controlling weight.[69]  The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[70]  In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[71] or that objective medical evidence does not support that opinion.[72]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[73]  The Commissioner's *post hoc* arguments on judicial review are immaterial.[74]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight.  In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment.

---

[69] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

[70] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[71] *Hensley v. Astrue*, 573 F.3d 263, 266-67 (6th Cir. 2009).

[72] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010).

[73] *Blakley*, 581 F.3d at 407.

[74] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[75]

- the rejection or discounting of the weight of a treating source without assigning weight,[76]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[77]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[78]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[79] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[80]

---

[75] *Blakley*, 581 F.3d at 407-08.

[76] *Id.* at 408.

[77] *Id.*

[78] *Id.* at 409.

[79] *Hensley*, 573 F.3d at 266-67.

[80] *Friend*, 375 F. App'x at 552.

The Sixth Circuit in *Blakley v. Commissioner of Social Security*[81] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[82] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[83]

In *Cole v. Astrue*,[84] the Sixth Circuit recently reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[85]

**C.     The ALJ's RFC findings are not supported by substantial evidence.**

Dennis's primary challenge goes to the treatment of the opinions of her treating physicians by the ALJ. In analyzing this issue, a detailed recitation of the psychological opinion evidence will be necessary. By way of summary, Kenneth Felker, Ph.D., performed

---

[81] *Blakley*, 581 F.3d 399.

[82] *Id*. at 409-10.

[83] *Id*. at 410.

[84] *Cole v. Astrue*, Case No. 09-4309 (6th Cir. Sept. 22, 2011) (slip opinion).

[85] *Id.* at 11.

a consulting examination in July of 2004.[86] State agency reviewing psychologists issued a residual functional capacity assessment shortly thereafter.[87] Based upon that evaluation, the state agency psychologist recommended limitation to brief superficial contacts and making simple decisions.[88] In doing so, the state agency psychologist noted that great weight was being given to Dr. Felker's opinion.[89]

Following an adverse decision by the ALJ, the Appeals Council remanded the case for further evaluation of Dennis's mental impairment and residual functional capacity.[90] Sally Felker, Ph.D., performed a second consultative examination in July of 2007.[91] After the consultative examination, state agency psychologists again did a residual functional capacity assessment, this time limiting Dennis to simple and repetitive tasks in a low stress environment that involved limited interaction with others.[92] It appears that these reviewing psychologists had before them Dr. Sally Felker's evaluation and certain treatment notes and evaluations from Melody Deogracias, M.D., Dennis's treating psychiatrist. These included

---

[86] Tr. at 220-23.

[87] *Id.* at 263-65.

[88] *Id.* at 265.

[89] *Id.*

[90] *Id.* at 346-48.

[91] *Id.* at 456-59.

[92] *Id.* at 460-69.

assessments done in February of 2007[93] and September of 2007.[94]  If given full weight, Dr. Deogracias's assessments would have required a finding of disability.[95]  It should be noted that the state agency reviewing psychologists did not specifically refer or comment on Dr. Deogracias's assessments or opinions.

In late 2007 and early 2008, James Bukuts, M.D., became Dennis's treating psychiatrist.  It appears from Dr. Bukuts's notes that he had first seen Dennis five years earlier but in the interim she had been treated by different psychiatrists.  He provided an assessment and opinion in February of 2008.[96]  The record also contains Dr. Bukuts treatment notes from November of 2007 through February of 2008.[97]

In deciding that Dennis was not disabled on remand, the ALJ gave the greatest weight to the opinions of the state agency psychologists and lesser weight to that of the consulting psychologists.  He criticized the opinions of the treating psychologists as being inconsistent with the medical evidence but did not refer to these treating psychologists by name or assign specific weight to their opinions.[98]  The ALJ's failure to identify and discuss the treating

---

[93] *Id.* at 438-40.

[94] *Id.* at 518-19.

[95] *Id.* at 26, n.18.

[96] *Id.* at 586-88.

[97] *Id.* at 590-92.

[98] *Id.* at 26, n.16 and 18; 34, n. 32.

psychiatrists's opinions other than by exhibit number and for the most part in footnotes makes the analysis extremely difficult to follow.

The ALJ places substantial weight on the opinion of state agency reviewing psychologists while acknowledging that those opinions are somewhat inconsistent from those of the consulting psychologists and the treating psychiatrists. Although the ALJ generally describes the latter opinions as exaggerated and not generally supported by the record, this is not enough to satisfy the articulation standards set forth by the Sixth Circuit in *Wilson* and its progeny.[99] The ALJ failed to assign weight to the opinions of the treating sources, another deficiency under this Circuit's *Wilson* jurisprudence.[100] Further, because the state agency psychologists do not specifically discuss the opinions of the consulting psychologists and the treating psychiatrists and explain why their conclusions differ, reliance on the state agency psychologists opinions runs contrary to the Sixth Circuit's precedents.[101]

I note further that, even in the analysis provided, the ALJ does not discuss that the state agency reviewers did not have before them the more recent, mostly contrary report of Dr. Bukuts, a treating source. The mere general assertion that the state agency reviews are somehow more credible than the opinions of treating and consulting sources "given the record as a whole," is inadequate given that those reviewers never saw or considered the

---

[99] *Friend*, 375 F. App'x at 552.

[100] *Blakley*, 581 F.3d at 408.

[101] *Blakley*, 581 F.3d at 409; *Hensley*, 573 F.3d at 266-67; *Friend*, 375 F. App'x at 552.

findings and evaluations of Dr. Bukuts.[102]   As such, I find that the stated reasons for discounting the opinions of treating and consulting sources in favor of state agency reviews does not, in this instance, comport with the level of articulation required by the controlling authority.

In sum, given the standards for articulation mandated in cases where the opinions of treating sources are given less than controlling weight, I find that the analysis here falls short of that standard and, therefore, does not constitute substantial evidence to support the Commissioner's decision.

## Conclusion

Accordingly, for the foregoing reasons, the decision by the Commissioner denying Dennis's applications for disability insurance benefits and supplemental security income is reversed and the case remanded for further proceedings.   On remand, the ALJ must reevaluate the opinions of the medical sources in the record, assign weight to the opinions of the treating sources, and give good reasons for the weight assigned.

For purposes of any potential application for attorney's fees under the Equal Access to Justice Act,[103] the Court concludes that the position of the Commissioner was substantially justified.

---

[102] *Cf.*, *Deskin v. Comm'r of Soc. Sec.*,  605 F. Supp. 2d 908, 912 (N.D. Ohio 2008).

[103] 28 U.S.C. § 2412(d)(1)(A).

-20-

IT IS SO ORDERED.


Dated:   October 20, 2011                       s/ William H. Baughman, Jr.
                                                United States Magistrate Judge